**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Louie O'Quin,<br><br>         Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>         Defendant. | No. CV-21-00729-PHX-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Louie O'Quin's Application for Disability Insurance Benefits. Plaintiff filed a Complaint (Doc. 1) with this Court seeking review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 12, Pl. Br.), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 13, Def. Br.), and Plaintiff's Reply (Doc. 14, Reply.) The Court has reviewed the briefs and the Administrative Record (Doc. 11, R.). For the following reasons, the Administrative Law Judge's ("ALJ") decision is affirmed.

**I.     BACKGROUND**

Plaintiff filed an Application for Disability Insurance Benefits on May 2, 2018. (R. at 181–82.) Plaintiff's claim was denied initially on September 5, 2019, and again upon reconsideration on February 15, 2019. (R. at 14.) He appeared before the ALJ for a hearing regarding his claim on June 4, 2020. (R. at 28.) On September 30, 2020, the ALJ issued a decision denying Plaintiff's claim. (R. at 11.) Plaintiff appealed, and on March 15, 2021, the Appeals Council denied the Request for Review and adopted the ALJ's decision as the

final agency decision. (R. at 1–6.) Plaintiff now seeks judicial review of that decision pursuant to 45 U.S.C. § 405(g).

The ALJ reviewed the entire record, including Plaintiff's medical records, Plaintiff's testimony, and the testimony of a vocational expert. (R. at 14–27.) Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: degenerative disc disease of the lumbar spine and thoracic spine, and obesity. (R. at 16.) At step three of the five-step sequential evaluation, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 18.) The ALJ then calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. The [Plaintiff] can stand and/or walk four hours in an eight-hour workday, and sit six hours in an eight-hour workday. He can frequently balance and occasionally climb ramps and stairs, occasionally stoop, kneel crouch and crawl, but never climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to extreme temperatures, humidity, vibrations, fumes, odors, dusts, gases and hazards.

(R. at 18.) Accordingly, at step five, the ALJ determined that the Plaintiff "is capable of performing pas relevant work as a systems analyst." (R. at 21.)

## II.     LEGAL STANDARD

In determining whether to reverse an ALJ's decision, a district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, a court must consider the record as a whole and may not affirm simply by isolating a "specific

quantum of supporting evidence." *Id.* (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The reviewing court should "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Even when the ALJ commits legal error, the reviewing court must uphold the decision where the error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Id.* (citations and internal quotation marks omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* If so, the ALJ continues to step three. There, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four, where she assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step. There, she determines whether the claimant can

1 perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If the claimant can perform such work, she is not disabled. *Id.* If she cannot, she is disabled. *Id.*

### III. DISCUSSION

Plaintiff raises two issues on appeal: (1) whether the ALJ failed to include a sitting limitation in the RFC and (2) whether the ALJ erred in rejecting Plaintiff's symptom testimony.

#### A. RFC Determination

Plaintiff first asserts that the ALJ erred by finding the opinion of Dr. John Peachey, MD, to be persuasive but nonetheless "reject[ing]" Dr. Peachey's sitting limitation. (Pl. Br. at 6.) The ALJ found that Plaintiff could "sit six hours in an eight-hour workday." (R. at 18.) In contrast, Dr. Peachey indicated on a checkbox form that Plaintiff could sit "less than six hours in an eight hour day (approximately 3–4 hours in an 8-hour day)." (R. at 487.)

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (quoting SSR 96–8p, 1996 WL 374184, at *5). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184 (July 2, 1996). Moreover, "[i]nitial failure to consider an individual's ability to perform the specific work-related functions could be critical to the outcome of the case." *Id.*

Here, the ALJ adequately discussed how the evidence in the record supported his finding that Plaintiff could sit for six hours out of an eight-hour workday. The ALJ relied on Plaintiff's activities of daily living (taking care of personal hygiene, doing household chores, preparing simple meals, driving, and shopping for groceries); and the opinions of

Dr. Hutchinson and Dr. Tanaka, who both noted that Plaintiff could sit "about 6 hours in an 8-hour workday." (R. at 20, 60, 74). Moreover, the ALJ considered the objective medical evidence, including that Plaintiff had "normal strength, sensation, straight-leg raise test[ results], stance and gait." (R. at 20.) Accordingly, the ALJ did not commit reversible error; in fact, the ALJ properly "consider[ed] all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and . . . symptoms." *Robbins*, 466 F.3d 880, 883.

Moreover, the ALJ did not err in his analysis of the Vocational Expert's ("VE") testimony. Plaintiff asserts that the VE interrogatories "stated that [Plaintiff] could perform his past work as described in the work history report if Dr. Peachey's limitations were applied." (Pl. Br. 6.) The VE, when considering Dr. Peachey's assigned limitations, determined that an individual could perform Plaintiff's past relevant work as actually performed, but not as generally performed in the national economy. (R. at 275.) The ALJ acknowledged "that the VE "found that a hypothetical individual with the limitations in . . . Dr. Peachey's" opinions could perform Plaintiff's past relevant work. (R. at 22.) This is consistent with Plaintiff's work history report indicating that at his past relevant job as a business system analyst, where he worked from 2000 to 2017, he sat four hours total each day. (R. at 221–22.) Regardless, the ALJ is required to consider all evidence, not just one isolated opinion, in his RFC determination. *Robbins*, 466 F.3d at 883. Accordingly, substantial evidence supports the ALJ's RFC finding.

To the extent that Plaintiff challenges the ALJ's treatment of Dr. Peachey's medical opinion evidence (Pl. Br. at 6, Reply at 2–3), the Court detects no error. For applications filed after March 27, 2017, the amended regulations for evaluating medical evidence apply. *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The 2017 regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a). Other

factors, which an ALJ "may, but [is] not required to [] explain" when evaluating the persuasiveness of a medical opinion, are the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and "understanding of our disability program's policies and evidentiary requirements." *Id.* § 404.1520c(b)(2), (c).

Under this new scheme, the most important factors that the ALJ considers are "supportability" and "consistency." 20 C.F.R. § 404.1520c(b)(2). Supportability is defined as how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical findings." *Id.* § 404.1520c(c)(1). The ALJ should also treat opinions as more persuasive if they are more consistent with "other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2). Lastly, the ALJ can also consider, to a lesser degree, other factors, such as the length and purpose of the treatment relationship, the kinds of examinations performed, and whether the medical source actually examined the claimant. *Woods*, 32 F.4th at 792.

The ALJ found Dr. Peachey's opinion to be persuasive on the whole. Nevertheless, the ALJ did not apply Dr. Peachey's specific opinion that claimant is able to sit only 3–4 hours in an 8-hour day, and the Court finds no error in that decision because Dr. Peachey's sitting opinion is inconsistent with the other evidence. (R. at 20.) As explained above, Plaintiff's activities of daily living and the opinions of Dr. Hutchinson and Dr. Tanaka, who both noted that Plaintiff could sit "about 6 hours in an 8-hour workday," conflict with Dr. Peachey's assigned limitation. (R. at 20, 60, 74). Likewise, the medical evidence shows that Plaintiff responded well to treatment, including medication and the placement of a spinal cord stimulator. (*See* R. at 339.) Thus, the Court finds no error.

### B. Symptom Testimony

Next, Plaintiff contends that "[th]he ALJ's reasons to reject [Plaintiff's] symptom testimony are not convincing." (Pl. Br. at 8.) Plaintiff claims that the ALJ erred by finding Plaintiff to be "more able bodied than alleged," and relying on activities that require more

than two hours of sitting per day as support. (Pl. Br. at 9.) In response, Defendant points out that "the ALJ did not completely reject his testimony" and merely found that Plaintiff's allegations were "not entirely consistent" with the record. (Def. Br. at 8.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison*, 759 F.3d at 1014. First, the ALJ determines whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). If so, the ALJ must then evaluate the claimant's testimony in the context of the objective medical evidence and other evidence in the record. *See* 20 C.F.R. §§ 404.1529(c)(2)–(3). To prevent the ALJ from "arbitrarily discredit[ing]" the claimant's subjective testimony, *see Pennock v. Comm'r*, 19-CV-08191-PCT-MTL, 2020 WL 6796768, at *6 (D. Ariz. Nov. 19, 2020) (quoting *Thomas*, 278 F.3d at 958), the Ninth Circuit has held that the ALJ may only discredit a claimant's allegations for reasons that are "specific, clear and convincing." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). This is an exacting standard, under which the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

In doing so, "the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ may consider, for instance, "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040). Indeed, "[e]ven where [the claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *id.* at 1113, or suggest that the claimant's "later claims about the severity of [the] limitations were exaggerated." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

In addition, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see also* 20 C.F.R. § 404.1529(c)(3). While the ALJ may consider that the medical record lacks evidence to support certain symptom testimony, that cannot form the sole basis for discounting the testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the Court finds that the ALJ did not commit reversible error in discrediting Plaintiff's symptom testimony. Under the first prong, the ALJ found that the medical evidence reflected degenerative disc disease of the lumbar spine post-laminectomy, degenerative disc disease of the thoracic spine, and obesity. (R. at 16.) The ALJ found Plaintiff's symptoms are "supported by the medical and other evidence in the file," but Plaintiff's "contentions regarding the severity and the related functional restrictions contradict[] the medical and other evidence within the file." (R. at 21.)

During the hearing, Plaintiff alleged that his medication made him feel "fuzzy," and he experienced back pain "probably every two weeks," difficulty walking, and problems bending over. (R. at 37–39.) This testimony is inconsistent with the medical and other evidence. But treatment notes for the Plaintiff show that he "responded well to conservative treatment," (R. at 19), and his doctor noted that Plaintiff's "pain is over 50% improved with the addition of Lyrica and [he] denies any side effects. . . . He has reduced his pain medication use to 2 pills per week." (R. at 381.) The ALJ noted that a physical examination showed "normal strength, sensation, straight-leg raise testing, stance, and gait." (R. at 19, *see also* 342, 365, 380, 428.) Moreover, Plaintiff's activities of daily living, such as routinely taking care of personal hygiene, household chores, preparing simple meals, driving, shopping for groceries also undermined his symptom allegations. Accordingly, the Court finds that the ALJ properly "consider[ed] inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[When] a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding

as to this fact may be sufficient to discredit an allegation of disabling excess pain."). Based on these inconsistencies, and other discrepancies between Plaintiff's reported symptoms and the record, it was reasonable for the ALJ to conclude that Plaintiff's "subjective complaints appear inconsistent." (R. at 19.) Accordingly, the ALJ's reasons for discrediting Plaintiff's symptom testimony were clear and convincing and supported by substantial evidence.

### IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** affirming the September 30, 2020 decision of the Administrative Law Judge (R. at 11–22), as upheld by the Appeals Council on March 15, 2021 (R. at 1–4.)

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter final judgment consistent with this Order and close this case.

Dated this 4th day of August, 2022.

Michael T. Liburdi
United States District Judge